530 S.E.2d 448

**Dave TUCKER, Sheriff of Kanawha County, West Virginia, as Personal Representative of the Estate of Reginald T. Seamon, Jr., Plaintiff Below, Appellant,**

v.

**WEST VIRGINIA DEPARTMENT OF CORRECTIONS, et al., Defendants Below, Appellees.**

No. 25440.

Supreme Court of Appeals of West Virginia.

Submitted March 9, 1999

Decided May 26, 1999.

Arthur T. Ciccarello, Esquire, Michael J. Del Giudice, Esquire, Ciccarello, Del Giudice & LaFon, Charleston, West Virginia, Attorneys for Appellant.

David P. Cleek, Esquire, Darin C. James, Esquire, Shuman, Annand, Bailey, Wyant & Earles, Charleston, West Virginia, Attorneys for Appellees.

**PER CURIAM:**

This is an appeal by David Tucker, Sheriff of Kanawha County, acting as Administrator of the Estate of Reginald T. Seamon, Jr., from an order of the Circuit Court of Kanawha County granting the West Virginia Department of Public Safety, Division of Corrections (which will hereafter be referred to as the "Division of Corrections" or "the Division") and certain individual defendants summary judgment in a wrongful death action. The circuit court granted summary judgment on the ground that the defendants were agents of the State and that the action was barred by the so-called "public duty doctrine." On appeal, the appellant claims that the public duty doctrine does not bar the action, and that, as a consequence, the circuit court erred in granting summary judgment.

## I.

### Facts

On March 30, 1990, an individual named Maurice "Ramel" Lundy shot and killed the appellant's decedent, Reginald T. Seamon, Jr., during an argument outside a bar located in Kanawha County, West Virginia. Maurice "Ramel" Lundy, who had never before encountered the appellant's decedent, had been previously convicted of voluntary manslaughter for the killing of another individual and had been sentenced to from one to five years in the state penitentiary. Because the manslaughter had involved the use of a firearm, Mr. Lundy was ineligible for release or parole on the one to five-year sentence until he served a mandatory three-year imprisonment term.[1]

In spite of the fact that the Division of Corrections could not release Mr. Lundy on parole for three years, it transferred Mr. Lundy to the Charleston Work Release Center after he had been imprisoned for only seven months. Further, while he was at the

---

1. W. Va.Code 62–12–13(a), provides, in relevant part:

Any inmate of a state correctional center, to be eligible for parole:
(1) (A) Shall have served the minimum term of his or her indeterminate sentence, or shall have served one fourth of his or her definite term sentence, as the case may be, except that in no case shall any person who committed, or attempted to commit a felony with the use, presentment or brandishing of a firearm, be eligible for parole prior to serving a minimum of three years of his or her sentence or the maximum sentence imposed by the court, whichever is less.

Center, he was released on two furloughs. He escaped during the second furlough, and, while he was at large, he murdered the appellant's decedent, Mr. Seamon.

In bringing the action in issue in the present case, the appellant claimed that the Division of Corrections and the individual defendants had acted negligently in exercising their custody over Maurice "Ramel" Lundy, and that as a result of their negligence in maintaining custody, Mr. Seamon had been wrongfully killed.

While the action was pending, the individual defendants and the Division of Corrections moved for summary judgment on the ground that the action was barred under the public duty doctrine. The motion was granted as to the individual defendants, and, after further discovery, the trial court concluded that the action was, in fact, barred insofar as the Division of Corrections was concerned by the public duty doctrine and granted summary judgment. The court found that the public duty doctrine barred actions against the State and its instrumentalities unless the doctrine was expressly waived or altered by the terms of an applicable insurance contract maintained by the State of West Virginia. The judge noted that he had examined the policy of insurance maintained by the State of West Virginia covering the Division of Corrections and its employees. He further found that the insurance policy contained no express waiver of the defense of the public duty doctrine and that, as a consequence, the doctrine barred the appellant's action. It is from that ruling that the appellant now appeals.

## II.

### Standard of Review

■ At the outset, we note that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

■ We also note that "[i]f there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact." Syllabus

Point 4, *Aetna Casualty & Surety Company v. Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

## III.

### Discussion

■ In *Parkulo v. West Virginia Board of Probation and Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996), we explained that the "public duty doctrine" is a doctrine which, independent of the constitutional doctrine of governmental immunity, holds, in its common law form, that a recovery for negligence may be had against the State or a governmental agent, officer or employee, acting in a non-fraudulent, nonmalicious or nonoppressive manner, only if the State had a "special relationship" with the party inured, that is, only if the duty which was negligently breached was owed by the State to the particular person seeking recovery.

■ We further outlined what must be shown to establish the "special relationship" sufficient to avoid the effect of the public duty doctrine:

> The four requirements for the application of the "special relationship" exception to W. Va.Code § 29–12–5 cases are as follows: (1) An assumption by the state governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the state governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the state governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the state governmental entity's affirmative undertaking.

Syllabus Point 12, *Parkulo v. West Virginia Board of Probation and Parole, id.*

■ In *Parkulo v. West Virginia Board of Probation and Parole, id.*, we recognized that the Legislature had implicitly altered the common law form of the "public duty doctrine" by recognizing that the State might expressly waive or alter the doctrine in insurance policies which it might purchase. We indicated, however, that unless there was

an express waiver or alteration of the doctrine in such policies, the public duty doctrine continued to preclude an action. We summarized our conclusion in Syllabus Point 10 of *Parkulo v. West Virginia Board of Probation and Parole, id.*, as follows:

> The public duty doctrine and its "special relationship" exception apply to W. Va. Code § 29–12–5 actions against the State and its instrumentalities, unless the doctrine is expressly waived or altered by the terms of the applicable insurance contract.

■ It is apparent in the present case that the appellant's decedent was not involved in a "special relationship" with the Division of Corrections or the individual defendants in this case because there was no direct contact between them as is required by Syllabus Point 12 of *Parkulo v. West Virginia Board of Probation and Parole, id.*

Similarly, we can find no factual basis for concluding that the insurance exception to the public duty doctrine applies in this case, for we can find no language in the insurance policy covering the Division of Corrections which expressly waived or altered the public duty doctrine.

■ The Court notes that the appellant claims that W. Va.Code 29–12–5a directs the State Board of Risk and Insurance Management to purchase liability insurance to cover the officers of the Division of Corrections.[2] The appellant argues that because the Legis-lature directed the State Board of Risk and Insurance Management to provide such liability insurance, it was the intent of the Legislature that such insurance expressly waive the public duty doctrine. We do not agree.

In *Carey v. Dostert*, 185 W.Va. 247, 406 S.E.2d 678 (1991), we indicated that the mere presence of insurance purchased by the State does not waive common law immunities. Further, an analysis of *Parkulo* shows that the mere existence of liability insurance purchased by the State Board of Risk and Insurance Management, pursuant to W. Va.Code 29–12–5a, has not been deemed sufficient to bring about a waiver of the public duty doctrine. The *Parkulo* case itself involved a situation where insurance had been purchased by the State Board of Risk and Insurance Management pursuant to Legislative directive, but in that case we held that the existence of such insurance was not, in and of itself, deemed sufficient to bring about a waiver of the public duty doctrine. The clear holding of *Parkulo* was that the doctrine must be expressly waived or altered by the terms of the applicable insurance contract. It is not the insurance contract itself which brings about the waiver, but its applicable terms which must expressly create that waiver.[3]

In the present case, we cannot conclude that there was express waiver of the public duty doctrine necessary to preclude the ap-

---

**2.** West Virginia Code 29–12–5a provides, in pertinent part:

> In accordance with the provisions of this article, the state board of risk and insurance management shall provide appropriate professional or other liability insurance for ... employees and officers of the state department of corrections. Said insurance shall cover any claim, demand, action, suit or judgment by reason of alleged negligence or other acts resulting in bodily injury or property damage to any person within or without any ... correctional institution if, at the time of the alleged injury, the ... officer of the department of corrections was acting in the discharge of his duties, within the scope of his office, position or employment, under the direction of the ... commissioner of corrections or in an official capacity as ... commissioner of corrections.
> \* \* \*
> The insurance policy shall include comprehensive coverage, personal injury coverage,

malpractice coverage, corporal punishment coverage, legal liability coverage as well as a provision for the payment of the cost of attorney's fees in connection with any claim, demand, action, suit or judgment arising from such alleged negligence or other act resulting in bodily injury under the conditions specified in this section.

**3.** In *Parkulo v. West Virginia Board of Probation and Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996), we remanded for a determination of what the policy in that case specifically state. We said:

> We have made clear that the immunities and defenses available to the State and its insurer in this action are defined first by the actual provisions of the policy or policies purchased by the State and may provide coverage notwithstanding common-law immunity or the public duty doctrine.

199 W.Va. at 180, 483 S.E.2d at 526.

plication of that doctrine to the appellant's action. Further, we believe that under the clear facts of the case, the doctrine precluded the bringing of the appellant's action against the Division of Corrections. There do not appear to be issues of material fact in the case, and it does not appear that inquiry concerning the facts is desirable to clarify the application of the law. Under such circumstances, *Aetna Casualty & Surety Company v. Federal Insurance Company of New York, supra,* indicates that summary judgment is appropriate.

The judgment of the Circuit Court of Kanawha County is, therefore, affirmed.

Affirmed.

Justice McGRAW dissents.