No. 12-0632 – Jackson v. Belcher

**FILED**

**September 26, 2013**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, Justice, dissenting:

I believe that the majority's opinion makes an overreaching determination that this Court's decision in *Pittsburgh Elevator Co. v. West Virginia Board of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983), serves to obliterate the immunity clearly granted under West Virginia Code § 15-5-11(a). In my view, the majority opinion's construction of the statute violates the most fundamental tenets of statutory construction, fails to make critical distinctions between the various types of immunities, and fails to account for a variety of cases describing the interplay between immunity and insurance coverage. Without question, the majority has crafted its new syllabus point limiting its analysis to the particular statute at issue. However, I fear that dicta contained in the majority's opinion regarding *Pittsburgh Elevator* may open the door to substantial attack on governmental immunities in West Virginia. For these reasons, I respectfully dissent.

A. **The majority's opinion construes West Virginia Code § 15-5-11(a) in an illogical manner and in contravention of several canons of statutory construction.**

This Court has long recognized that the "cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section,

clause, word or part of the statute." Syl. Pt. 3, *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999); *see also State ex rel. Johnson v. Robinson*, 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979) ("It is a well known rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning."); accord *Davis Memorial Hosp. v. West Virginia State Tax Com'r,* 222 W.Va. 677, 671 S.E.2d 682 (2008). "It is always presumed that the legislature will not enact a meaningless or useless statute." Syl. Pt. 3, *United Steelworkers of America, AFL–CIO, CLC v. Tri–State Greyhound Park*, 178 W.Va. 729, 364 S.E.2d 257 (1987) (citing Syl. Pt. 4, *State ex rel. Hardesty v. Aracoma–Chief Logan No. 4523, V.F.W.*, 147 W.Va. 645, 129 S.E.2d 921 (1963)). Courts should favor the plain and obvious meaning of a statute as opposed to a narrow or strained construction. *T. Weston, Inc. v. Mineral County*, 219 W.Va. 564, 638 S.E.2d 167 (2006) (citing *Thompson v. Chesapeake & O. Ry. Co.*, 76 F. Supp. 304, 307–308 (S.D. W. Va.1948)).

To say that the majority has strained the plain and obvious meaning of West Virginia Code § 15-5-11(a) is an understatement. In its stated attempt to give effect to all parts of the statute, including its final caveat, the majority has stripped the statute of any operational effect. West Virginia Code § 15-5-11(a) provides:

> All functions hereunder and all other activities relating to emergency services are hereby declared to be governmental functions. *Neither the state nor any political subdivision nor any agency of the state or political subdivision nor, except in*

2

> *cases of willful misconduct, any duly qualified emergency service worker complying with or reasonably attempting to comply with this article or any order, rule, regulation or ordinance promulgated pursuant to this article, shall be liable for the death of or injury to any person or for damage to any property as a result of such activity.* This section does not affect the right of any person to receive benefits or compensation to which he or she would otherwise be entitled under this article, chapter twenty-three of this code, any Act of Congress or any other law.

(emphasis added). The majority's interpretation of the caveat at the end of § 15-5-11(a)—providing that the immunity clearly granted in the statute does not affect a person's right to other "benefits or compensation" under several specifically identified statutes or "any other law"—effectively subsumes the immunity granted in the first part of the statute. The majority construes "any other law" to include our holding in *Pittsburgh Elevator*, which makes an exception to *sovereign* immunity to the extent of insurance coverage. Under the majority's illogical analysis, the exception quite literally devours the rule.

To the extent this case turns on the meaning of "any other law" as utilized in West Virginia Code § 15-5-11(a), two previously-recognized canons of construction clearly illuminate its meaning. In *Davis Memorial Hospital. v. West Virginia State Tax Commissioner*, 222 W.Va. 677, 684, 671 S.E.2d 682, 689 (2008), this Court recognized two canons of construction for the interpretation of an undefined term which is one of several enumerated, otherwise clear, terms: "*Ejusdem generis* is a 'canon of construction

3

that when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed.'" (citing Black's Law Dictionary 535 (7th ed.1999)). We further recognized *"[n]oscitur a sociis*, is a 'canon of construction holding that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it.'" *Id*. at 684 n.11, 671 S.E.2d at 689 n.11 (citing Black's Law Dictionary 1084 (7th ed.1999)).

To that end, the full context of "any other law" in the applicable statute provides that "[t]his section does not affect the right of any person to receive benefits or compensation to which he or she would otherwise be entitled under this article, chapter twenty-three of this code [§§ 23-1-1 et seq.], any Act of Congress or any other law." First, the use of the very particular terms "benefits or compensation" certainly connotes statutory entitlements or contractually acquired rights, as opposed to "damages." In support of this conclusion, the statute goes on to identify precisely those types of items. Benefits or compensation "under this article" contemplate statutorily-authorized benefits available under the "Homeland Security and Emergency Management" provisions of the West Virginia Code. Benefits or compensation under "chapter twenty-three" expressly refers to workers' compensation benefits. Benefits or compensation under "any Act of Congress" suggests the type of statutorily-authorized funds made available by the Federal government such as FEMA disaster or emergency relief funds. Utilizing the canons of

4

construction previously recognized by this Court, benefits or compensation under "any other law" must necessarily mean any other law which provides for *similar* statutory or even contractual remuneration. An opinion of this Court which stands for the specific and limited proposition that the State does not enjoy sovereign immunity from suit to the extent of insurance coverage available, bears no similarity to the specific benefits or compensation expressly identified by the Legislature.

All other canons of statutory construction aside, "[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953); Syl. Pt. 2, *Martin v. Hamblet*, 230 W.Va. 183, 737 S.E.2d 80 (2012). With particular application to this case, "it is this Court's duty 'to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results.'" *Taylor-Hurley v. Mingo County Bd. of Educ.*, 209 W.Va. 780, 551 S.E.2d 702 (2001) (citing *State v. Kerns*, 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990)). The majority's interpretation of West Virginia Code § 15-5-11(a) has rendered the immunity plainly articulated by the Legislature wholly without effect. Such an interpretation is, at a minimum, unjust and unreasonable. It is notable that in spite of the majority's stated efforts to avoid "selectively read[ing] a portion of the challenged statutory section and [] disregard[ing] the remainder" it appears

5

to have done precisely that. Nowhere in its opinion does the majority explain, as a result of its construction of "any other law," how the statute has any residual effect.[1]

I find it particularly poignant that the majority reaches their conclusion at or around the twelfth anniversary of the September 11th terrorist attacks. Under the majority's analysis, if West Virginia had the misfortune to be subject of a similar attack, the countless fire, police, emergency services, and other state employees who would put themselves in harm's way to render assistance and aid could then find themselves thereafter burdened with lawsuits for damages in connection with the rendering of those services. I am troubled by the notion that an emergency services worker, while in the exercise of vital life-saving and/or other ameliorative aid, might now be forced to consider the liability implications of their actions. Additionally, I would be remiss if I did not note that the subject statute was amended in 2006 to specifically include mine rescue teams as part of those governmental employees entitled to immunity. The purpose of this statute is plain. The Legislature sought to ensure that emergency services workers could function without fear that their instantaneous actions and decisions—which are undertaken for no other purpose than to selflessly render vital emergency service and aid

---

[1]I fully anticipate that in response to the majority's opinion, the Legislature will revisit West Virginia Code § 15-5-11(a) to remove the provision "or any other law." It will likely be replaced with more specific language such as "or any other legislative enactment." Undoubtedly, the Legislature will make it abundantly clear that it is referencing a grant of authority from a statutory enactment.

to the citizens of West Virginia—would later be scrutinized under quiet reflection and dissected in the throes of litigation. The Legislature could not have been clearer—the State, its agencies, its political subdivisions, and their emergency service workers "shall [not] be liable for the death of or injury to any person or for damage to any property as a result of such [emergency service-related] activity."

**B.     The majority's opinion fails to distinguish between the various types of immunities available to the State and the function of the State's liability insurance, resulting in a complete misapplication of *Pittsburgh Elevator*.**

After concluding that "any other law" as utilized in West Virginia Code § 15-5-11(a) includes decisions rendered by this Court, the majority then misconstrues a long-standing opinion of this Court. In so doing, the majority's scant analysis fails to appreciate critical distinctions in the various types of immunities, resulting in what I believe is a misguided construction of *Pittsburgh Elevator*.

Surprisingly, the majority dedicates precious few pages to the conclusion that *Pittsburgh Elevator* somehow creates for the petitioner an unfettered "right of recovery" against the state to the extent of its available insurance. This, despite the fact that *Pittsburgh Elevator* has long been understood to stand for the very narrow holding that the state does not enjoy a *complete* bar to suit in light of West Virginia Code § 29-12-5; that is to say, suits which "allege that recovery is sought under and up to the limits

7

of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State." Syl. Pt. 2, in part, *Parkulo v. West Virginia Board of Probation and Parole,* 199 W. Va. 161, 483 S.E.2d 507 (1996). However, it is particularly unsatisfying, in light of the majority's forced analysis, to simply assert that *Pittsburgh Elevator* concerned sovereign or constitutional immunity, rather than more limited forms of governmental immunity, and leave it at that.[2] A closer read of *Pittsburgh Elevator* and our body of case law regarding governmental immunity is necessary to fully reveal the import of that distinction and why that distinction undermines the majority's frustratingly sparse analysis.

In *Pittsburgh Elevator*, the Court sought to address the effect of West Virginia Code § 29-12-5 authorizing the State Board of Risk and Insurance Management (hereinafter "BRIM") to purchase liability insurance on the state's constitutional or sovereign immunity from suit contained in W. Va. Const. art. VI. § 35: "The State of West Virginia shall never be made defendant in any court of law or equity." After

---

[2]This dissent is particularly critical of the majority for failing to distinguish between the different types and purposes of various forms of governmental immunity. Occasionally, throughout this dissent, reference is made to particular types of immunity, i.e. qualified or statutory, or cases dealing with these immunities as they pertain to either the state or political subdivisions. Recognizing of course that these more limited "functional" immunities are distinct in and among themselves, I do not suggest by their collective usage herein they are interchangeable concepts. Rather, for purposes of this dissent alone, they are given somewhat collective treatment as limited, fact-specific immunities for purpose of distinguishing their use and purpose from constitutional or sovereign immunity.

debating the constitutional implications of a suit against the State, the Court clearly focused on the plain language of West Virginia Code § 29-12-5 which provides that "[a]ny policy of insurance purchased or contracted for by the board shall provide that the insurer shall be barred and estopped from relying upon the constitutional immunity of the state of West Virginia against claims or suits."

In reaching its ultimate conclusion, the Court distinguished prior cases which rejected attempts to defeat sovereign immunity to the extent of available insurance coverage by recognizing that since those cases were decided, West Virginia Code § 29-12-5 was enacted and *expressly* "prohibits the insurer from whom a policy has been purchased from relying upon the constitutional immunity of the State against claims or suits." As such, the Court found that *"[i]n light of this statutory prohibition, we conclude that a suit seeking recovery against the State's insurance carrier is outside the bounds of the constitutional bar to suit contained in W. Va. Const. art. VI. § 35."* *Pittsburgh Elevator*, 172 W. Va. at 756, 310 S.E.2d at 688 (emphasis added); *see also Blessing v. National Engineering & Contracting Co*., 222 W.Va. 267, 273, 664 S.E.2d 152, 158 (2008) ("At the heart of our reasoning in *Pittsburgh Elevator* was a recognition that the fulcrum which enables suits to be instituted against the State and its agencies is the legislative provision proscribing an insurer who contracts with the board of risk from asserting sovereign immunity as a bar to litigation.") In sum, the Court found that the

express statutory language evinced a legislative intent to create an exception to *sovereign* immunity, no more and no less. Somewhat ironically, *Pittsburgh Elevator*—upon which the majority exclusively relies—was aimed at doing the *least* harm to the Legislature's enactment and the intent behind it. The majority now wields *Pittsburgh Elevator* as a weapon against the Legislature's intent in the enactment of West Virginia Code § 15-5-11(a).

The significance of the limited holding in *Pittsburgh Elevator* cannot be overstated and, apparently, bears reiteration. Without question, *Pittsburgh Elevator* addressed sovereign immunity only. The *Pittsburgh Elevator* Court concluded that, given that the purpose of sovereign immunity is to "protect the public purse," it is "simply inapplicable" where there is insurance coverage. *Id*. at 756, 310 S.E.2d at 689. However, *Pittsburgh Elevator* does not in any measure speak to other more limited statutory or common law immunities available to the state, its agencies, political subdivisions, and their employees, which serve an entirely different purpose than protecting the "public purse." The statute at issue, West Virginia Code § 15-5-11(a), is precisely the type of more limited, functional immunity that is available to the state, its

agencies, and employees, irrespective of the existence of insurance coverage, and therefore, has nothing whatsoever to do with the issues presented in *Pittsburgh Elevator.*[3]

The majority concludes that by permitting recovery in this case in spite of the immunity plainly established in West Virginia Code § 15-5-11(a), the "public treasury remains protected while the individual, him/herself, retains the 'right . . . to receive benefits or compensation[.]'" What the majority fails to expressly recognize is that the immunity presented in West Virginia Code § 15-5-11 is in no way concerned with the "public treasury"; it is concerned with protecting the ability of emergency services workers to do their job without fear of being mired in *post-hoc* litigation. Moreover, the majority's circular logic reads into the statute an exception for the "right of recovery" permitted by *Pittsburgh Elevator*; however, *Pittsburgh Elevator* establishes no "right of recovery." It establishes an exception to the complete bar to suits against the state, which suit is thereafter subject to all statutory and common law immunities and defenses available to it, such as the statute at issue. There is no question about the petitioner's right to bring a suit against the state to the extent of applicable insurance; the defense launched in the case *sub judice* was one of *statutory* immunity for the very

---

[3]In fact, statutes like West Virginia Code § 15-5-11 are widely considered to be *the result* of the gradual abrogation of the State's general immunity from tort liability. As stated in the commentary to the Restatement (Second) of Torts § 895B cmt. f (1979): "With the abolition of general tort immunity, whether by legislation or judicial decision, legislatures have frequently substituted other types of restrictions or limitations. . . . The immunity may be maintained for designated activities or factual situations."

precise functions and actions upon which the petitioner sought to base his negligence allegations.

The notion that sovereign or constitutional immunity from suit is a concept separate and apart from other, more limited, types of statutory or common law immunity[4] and therefore unaffected by *Pittsburgh Elevator* was first properly recognized by this Court in *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995). The Court began its analysis by recognizing the above-described constitutional or sovereign immunity and the exception thereto created by the Legislature and as acknowledged in *Pittsburgh Elevator*.[5] It then further acknowledged that more limited immunities available to the State were unaffected by *Pittsburgh Elevator*:

---

[4]The distinction between sovereign or constitutional immunity and qualified or statutory immunities was nicely articulated by the Arkansas Supreme Court: "[W]hile absolute immunity 'bars a suit at the outset,' qualified immunity 'is in the nature of an affirmative defense.'" *Vent v. Johnson*, 303 S.W.3d 46 (Ark. 2009) (citing *McCrory v. Johnson*, 755 S.W.2d 566, 572 (Ark. 1988); *see also Dermott Special Sch. Dist. v. Johnson*, 32 S.W.3d 477 (Ark. 2000) (distinguishing the "broad constitutional grant to the State to be free from being made a defendant in any of her courts" from the "limited immunity statutorily granted to political subdivisions from damages negligently inflicted on others").

[5]This Court has historically been very careful to characterize the conclusion reached in *Pittsburgh Elevator* as an "exception" to constitutional immunity and/or as demonstrating the "inapplicability" of constitutional immunity to avoid conflict with this Court's holdings that the Legislature may not *waive* the state's constitutional immunity from suit. *Clark*, 195 W. Va. at 276, 465 S.E.2d at 378; *Pittsburgh Elevator,* 172 W. Va. at 756, 310 S.E.2d at 688-89. The inherent tension in these holdings was first recognized

> The State enjoys constitutional or sovereign immunity, as expressed in Section 35, Article VI, of the West Virginia Constitution[.] . . .
>
> ***
>
> However, we have recognized an exception to this immunity .
> . . .
>
> ***
>
> We assume that the appellants expected to utilize this exception to the constitutional immunity of the State and its officer acting within the scope of his employment in this action. . . . .
>
> ***
>
> Here, we address *whether there is a further source of immunity,* in addition to that granted by Section 35, Article VI of the Constitution*, which affords a different kind of limited immunity to the State . . . .*

*Id*. at 276-77, 465 S.E.2d at 378-79. The Court then went on to hold that "[i]n the absence of an insurance contract waiving the defense," qualified immunity bars a claim against the State and or its employee for negligence in the performance of discretionary judgments and actions. Syl. Pt. 6, *Clark*. It was in *Clark* where this Court first articulated the precise reason the immunity at issue in the case *sub judice* is so vital: "In performing those [immune acts], [an officer] should not be faced with the choice of either inaction and dereliction of duty or 'being mulcted in damages' for doing his duty." *Id*. at 278, 465 S.E.2d at 380 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

---

in the separate opinions authored by Justices Neely and Miller in *Pittsburgh Elevator* itself, 172 W. Va. at 757-760, 310 S.E.2d 690-691 (Neely, J., concurring in part and dissenting in part), 172 W. Va. at 759-761, 310 S.E.2d at 691-93 (Miller, J., concurring) and has thereafter been discussed by my colleague, Chief Justice Benjamin. *See Blessing,* 222 W.Va. 267, 664 S.E.2d 152 (Benjamin, J., concurring); *J.H. v. West Virginia Div. of Rehabilitation Services,* 224 W.Va. 147, 680 S.E.2d 392 (2009) (Benjamin, J., concurring).

In short, sovereign immunity presents a procedural bar to suit; statutory and/or other common law immunities are designed to substantively bar particular functions and acts of governmental entities, officials, and employees from the burdens of litigation.[6] Summarily construing *Pittsburgh Elevator* to permit liability where there is the presence of insurance which ostensibly covers the claim, is more than a mere "extension" of its holding. It is a misapplication of *Pittsburgh Elevator* to wholly separate concepts of immunity, none of which justify similar treatment upon analysis.

**C.     The majority opinion disregards decades of case law regarding immunity and the effect of insurance coverage on its availability to governmental entities.**

The majority's thin analysis leaves little room for distinguishing cases in which similar arguments have been advanced and expressly rejected by this Court. Undoubtedly, the majority concluded that such analysis was unnecessary given the manner in which it reached its conclusion: the apparent belief that the Legislature's

---

[6]*See* 63C Am.Jur.2d Public Officers and Employees § 302 ("The state's sovereign immunity from suit is procedural in nature, while the immunity afforded public officers with respect to the performance of their official functions is a substantive limitation of their personal liability for damages in its common law.") Furthermore, "[t]he immunity of public officials is a more limited principle than governmental immunity, since its purpose is not directly to protect the sovereign, but rather to do so only collaterally, by protecting the public official in the performance of a *government function*." *Id.* (emphasis added).

It is therefore noteworthy that the statute at issue begins by expressly stating that "[a]ll functions hereunder and all other activities relating to emergency services are hereby declared to be *governmental functions*." W. Va. Code § 15-5-11(a) (emphasis added).

14

imprecise language opened the door to its reading of the statute. My fear, however, is that the majority's analysis may leave lingering questions as to the effect of insurance coverage on available common law or statutory immunities.

Shortly following *Clark*, this Court had the opportunity to address the precise issue presented herein and came to the fully opposite conclusion: the existence of insurance and the mandate contained in West Virginia Code § 29-12-5 does not serve to eliminate any remaining immunities available to a governmental entity unless the policy *expressly waives* immunity. In *Parkulo v. West Virginia Board of Probation and Parole,* 199 W. Va. 161, 483 S.E.2d 507 (1996), the Court engaged in a lengthy analysis of constitutional and common law governmental immunities, and sought in fact to harmonize these concepts. In a section entitled "Reconciling the Concepts of Common Law Governmental Immunities, the Public Duty Doctrine, and the Insurance Exception to Constitutional Immunity," the Court concluded that unless the insurance policy expressly waives immunity, a governmental entity retains common law immunities. *Id*. at 176, 483 S.E.2d at 522. Addressing the precise issue presented to this Court in the case *sub judice*, the Court reasoned in *Parkulo* that "[w]e cannot conclude that the Legislature intended by its enactment of W. Va. Code § 29-12-5 to abolish this [common law] immunity[.]" 199 W. Va. at 176, 483 S.E.2d at 522. That the Court's holding in *Parkulo* is specific as to common law immunities as opposed to statutory immunities is of no moment; in fact,

15

it is *less* rational to conclude that the Legislature intended by enacting West Virginia Code § 29-12-5 to abolish the very immunity it provided in West Virginia Code § 15-5-11(a).

As a result of the analysis in *Parkulo*, in two separate syllabus points, this Court reiterated that immunity erodes only to the extent that such is expressly waived in the policy:

> *Unless the applicable insurance policy otherwise expressly provides*, a State agency or instrumentality, as an entity, is immune under common-law principles from tort liability in W.Va. Code § 29-12-5 actions for acts or omissions in the exercise of a legislative or judicial function and for the exercise of an administrative function involving the determination of fundamental governmental policy.
>
> In cases arising under W.Va. Code § 29-12-5, and *in the absence of express provisions of the insurance contract to the contrary*, the immunity of the State is coterminous with the qualified immunity of a public executive official whose acts or omissions give rise to the case. However, on occasion, the State will be entitled to immunity when the official is not entitled to the same immunity; in others, the official will be entitled to immunity when the State is not. The existence of the State's immunity of the State must be determined on a case-by-case basis.

Syl. Pts. 6 and 9, *Parkulo,* 199 W. Va. 161, 483 S.E.2d 507 (emphasis added).

Moreover, this precise argument has been previously rejected by this Court in the context of the common law "qualified immunity." In *Carey v. Dostert*, 185 W. Va. 247, 406 S.E.2d 678 (1991), the respondent argued that the existence of liability insurance "constitutes a waiver of the right to assert judicial immunity as a defense in this action." Contrasting the effect of insurance on *sovereign* immunity, this Court *expressly* held that the existence of an insurance policy "has no effect whatsoever on the doctrine of judicial immunity in this jurisdiction." *Id*. at 252-53 & n.10, 406 S.E.2d at 683-84 & n.10. It is patently self-serving for this Court to preserve inviolate its own immunity, but so easily discard immunity expressly provided by the Legislature for emergency service workers. This Court again rejected this argument in *Tucker v. West Virginia Dept. of Correction*, 207 W. Va. 187, 530 S.E.2d 448 (1999), wherein the appellant argued that because the Legislature directed BRIM to provide liability insurance, the Legislature intended to waive the immunity provided by the public duty doctrine.[7] Further elucidating this Court's holdings in *Parkulo* regarding waiver of immunities in insurance policies, the *Tucker* Court noted that "an analysis of *Parkulo* shows that the mere existence of liability insurance purchased by the State Board of Risk and Insurance Management, pursuant to W. Va. Code 29-12-5a, has not been deemed sufficient to bring about a waiver of the public duty doctrine." *Id.* at 190, 530 S.E.2d at 451. The Court

---

[7]I recognize, of course, that the public duty doctrine is not an "immunity," but rather the absence of duty to support a cause of action. The concept, however, was analyzed in the same fashion as an immunity in *Tucker*, because "in practice it achieves much the same result." *Benson v. Kutsch*, 181 W.Va. 1, 2, 380 S.E.2d 36, 37 (1989).

17

then correctly explained that "[i]t is not the insurance contract itself which brings about the waiver, but its applicable terms which must *expressly* create that waiver." *Id*. (emphasis added).[8]

The reason for the purchase of insurance by a governmental entity is obvious: quite simply, there are actions and functions in which it or its employees may engage which are not subject to immunity. As such, the mere existence of insurance is in no way a tacit waiver of common law or statutory immunities. This precise concept was recognized by the Iowa Supreme Court in analyzing a similar argument involving a similar statute to West Virginia Code § 29-12-5 permitting the purchase of insurance:

---

[8]To that end, a brief review of the operative insuring language of the subject policy quickly reveals the fallacy in any suggestion that where there is "coverage" for a claim, there is no immunity. "Section II—Liability Coverage" of the State's Automobile Liability Policy (which is readily available on BRIM's website, *www.state.wv.us/BRIM)* states: "We will pay all sums an 'insured' *legally must pay as damages* because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (emphasis added). Quite simply, the State is not "legally [required to] pay" damages which occurred as the result of acts or functions for which it has immunity. As such, although there is a policy which presumably covers the vehicle, employee, and *general* activity underlying the case at bar, that does not mean that there is "coverage" (an imprecise and gross generalization) for the underlying claim. Moreover, procuring coverage which ostensibly covers the employee and vehicle herein *under non-immune circumstances*, does not serve to waive immunity for that same employee and vehicle when engaged in activities for which they enjoy immunity. Per the insuring language of the policy, the threshold question which must be addressed is whether there is immunity; if not, only then is the insured "legally" required to pay damages, which *then* triggers the coverage.

In passing section 613A.7—now section 670.7—we think the legislature intended to keep intact, to a limited extent, the common law rule that existed before the enactment of statutes waiving governmental immunity. As mentioned, that rule provided that a municipality's mere purchase of insurance does not constitute a waiver of its immunity. As this court explained, there is good reason for the common law rule. At common law, governmental immunity did not cover all potential liability of a municipality. For example, "[n]either the city nor its employees were protected against liability for negligence incurred in performing proprietary functions; and the city at least had liability for its failure to keep its streets and parks reasonably safe and free from nuisance." *McGrath*, 248 Iowa at 1393, 85 N.W.2d at 621 (holding Iowa Code section 368A.1(12) authorizing cities and towns to purchase liability insurance was not intended to enlarge liability of a city or town purchasing such insurance).

Likewise, now, there are claims to which governmental immunity does not apply. See Iowa Code §§ 670.2, 670.12. Also, municipalities have a duty to defend and indemnify officers and employees against any tort claims arising out of their employment. See Iowa Code § 670.8. The language of section 670.7 makes clear that the legislature intended to authorize municipalities to purchase liability insurance insuring against such claims.

The language of section 670.7 makes it equally clear that—as to claims listed in section 670.4 to which governmental immunity does apply—municipalities have authority to purchase a liability insurance policy insuring against them. And governmental immunity as to those claims is waived but only to the extent stated in such policy. So, to this extent, the legislature has modified the common law rule that the mere purchase of insurance does not constitute a waiver of immunity.

*City of West Branch v. Miller,* 546 N.W.2d 598 (Iowa1996).

19

I recognize that the majority's new syllabus point is carefully crafted such as to be limited to the statute at issue. I recognize further that the majority justifies this result by arguing that the ambiguous wording of "any other law" necessarily includes the opinions of this Court, particularly *Pittsburgh Elevator*. However, in light of what I believe is a forced interpretation of the statute and misreading of *Pittsburgh Elevator,* I fear the Court's opinion may be utilized to further attempt to chip away at well-established common law and statutory immunities which are vital to the proper function of government. When this Court conflates the concepts of sovereign immunity with statutory immunity under the guise of statutory construction, it does a disservice to the practitioners and circuit courts of this state who are faced with the practical application of these admittedly intricate concepts. When it does so without so much as a nod to the wholly separate functions of these types of immunities, it invites the use of its holding in a manner inconsistent with our long-standing body of jurisprudence on these highly complex principles.

Accordingly, I respectfully dissent.