IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2016 Term

_____

No. 15-0879

_____

FILED
**October 27, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

BRENDA ALBERT,
Plaintiff Below, Petitioner

v.

CITY OF WHEELING,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Ohio County
Honorable James A. Cuomo
Civil Action No. 15-C-43

AFFIRMED

_____

Submitted: October 4, 2016
Filed:  October 27, 2016

Ronald Wm Kasserman, Esq.                 Thomas E. Buck, Esq.
Kasserman Law Offices                     Bruce M. Clark, Esq.
Wheeling, West Virginia                   Bailey & Wyant, PLLC
Counsel for Petitioner                    Wheeling, West Virginia
                                          Counsel for Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.
JUSTICE BENJAMIN concurs and reserves the right to file a concurring opinion.
JUSTICE DAVIS and JUSTICE WORKMAN dissent and reserve the right to file
dissenting opinions.

SYLLABUS

1.  "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."  Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995).

2.  "The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine.  Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition."  Syl. Pt. 1, *Hutchison v. City of Huntington*, 198 W.Va. 139, 479 S.E.2d 649 (1996).

3.  "Pursuant to *W.Va. Code*, 29-12A-4(c)(2) [1986] and *W.Va. Code*, 29-12A-5(a)(9) [1986], a political subdivision is immune from liability if a loss or claim results from licensing powers or functions such as the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority, regardless of whether such loss or claim is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment."  Syl. Pt. 4, *Hose v. Berkeley Cty. Planning Comm'n*, 194 W.Va. 515, 460 S.E.2d 761 (1995).

i

4.  Statutory immunity exists for a political subdivision under the provisions of West Virginia Code § 29-12A-5(a)(5) (2013) if a loss or claim results from the failure to provide fire protection or the method of providing fire protection regardless of whether such loss or claim, asserted under West Virginia Code § 29-12A-4(c)(2) (2013), is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment.  To the extent that this ruling is inconsistent with syllabus point five of *Smith v. Burdette*, 211 W.Va. 477, 566 S.E.2d 614 (2002), the holding as it pertains to the negligent acts of a political subdivision's employee in furtherance of a method of providing fire protection is hereby overruled.

5.  Statutory immunity exists for a political subdivision under West Virginia Code § 29-12A-5(a)(5) (2013) if a loss or claim results from the failure to provide fire protection or the method of providing fire protection regardless of whether such loss or claim, asserted under West Virginia Code § 29-12A-4(c)(3) (2013), is caused by the negligent failure of the political subdivision to maintain, inspect and otherwise keep its waterworks and fire hydrant system fully operable.

6.  For purposes of the immunity provided by West Virginia Code § 29-12A-5(a)(5) (2013), a municipality's policy of inspecting and maintaining its fire hydrants is directly connected to the city's method of providing fire protection.

LOUGHRY, Justice:

The petitioner, Brenda Albert, appeals from the August 18, 2015, order of the Circuit Court of Ohio County, granting the motion of the respondent, the City of Wheeling ("City"), to dismiss the negligence-based complaint Ms. Albert filed against the City for the loss of her home due to fire. As grounds for its ruling, the trial court relied upon the grant of immunity extended to political subdivisions for fire protection services by West Virginia Code § 29-12A-5(a)(5) (2013).[1] Acknowledging the creative pleading of her case as arising from the negligent inspection and/or maintenance of the fire hydrant system, the trial court nonetheless rejected the petitioner's attempt to circumvent the grant of legislative immunity extended to political subdivisions[2] for failing to provide, or the method of providing, fire protection. Arguing that her complaint is based solely on the City's aqueduct system and not on the provision of fire protection services, the petitioner seeks to have her complaint reinstated. Having reviewed the applicable statutes and law against the pleadings and submitted record in this case, we do not find that the trial court committed error in its application of statutory immunity as a bar to further prosecution of the petitioner's case. Accordingly, we affirm.

---

[1]The trial court also relied on the common law public duty doctrine in dismissing the complaint; the petitioner has appealed this matter based solely on the application of statutory immunity. Her attorney acknowledged during oral argument that he could not establish the existence of a special duty owed to Ms. Albert by the City.

[2]*See infra* note 7 (defining "political subdivision").

1

## I. Factual and Procedural Background

When a fire started in the dining room of the first floor of the petitioner's home on February 14, 2013, the Wheeling Fire Department was dispatched to Ms. Albert's home. After initially containing the fire on the first floor, the firemen proceeded to the basement where they encountered a problem with the fire hoses. According to the fire incident report, the water presumably stopped flowing due to rocks clogging the line. As a result of the blocked fire hoses, the house continued to burn and was ultimately declared a total loss.[3]

The petitioner instituted a lawsuit against the City on February 5, 2015, alleging that the City negligently failed to inspect, maintain, and operate its waterworks and fire hydrant system. She expressly asserted liability based on the negligent acts of the City in failing to contain the fire that resulted in her house being declared a total loss. In responding to the complaint, the City filed a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure in which it asserted statutory immunity for fire protection services.[4] After hearing argument on the motion, the circuit court granted the City's motion to dismiss based on its determination that both statutory and common law

---

[3]The petitioner did not have any home owner's insurance on her residence.

[4]*See* W.Va. Code § 29-12A-5(a)(5).

2

immunity prevented further prosecution of the subject lawsuit.[5]  It is from this ruling that Ms. Albert seeks relief.

## II.  Standard of Review

As we announced in syllabus point two of *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995), "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."  Of further import to this matter is syllabus point one of *Hutchison v. City of Huntington*, 198 W.Va. 139, 479 S.E.2d 649 (1996):  "The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine.  Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition."  Fully cognizant of these applicable standards, we proceed to determine whether the circuit court erred in ruling that the legislative grant of immunity pursuant to West Virginia Code § 29-12A-5(a)(5) prevents Ms. Albert from pursuing her case against the City.

## III.  Discussion

In seeking to impose liability against the City for its actions in connection with

---

[5]*See supra* note 1.

her fire-decimated home, the petitioner focused narrowly on portions of two subsections of The Governmental Tort Claims and Insurance Reform Act ("Tort Claims Act").[6] *See* §§W.Va. Code § 29-12A-1 to -18 (2013). She relies on subsection 4(c)(2), which authorizes the imposition of liability on a political subdivision "for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment."[7] W.Va. Code § 29-12A-4(c)(2). As additional authority for her action, the petitioner cites to subsection 4(c)(3), which provides authority for imposing liability on a political subdivision "for injury, death, or loss to persons or property caused by the negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, *aqueducts*, viaducts, or public grounds . . . open, in repair, or free from nuisance . . . ."[8] W.Va. Code § 29-12A-4(c)(3) (emphasis supplied). Wholly overlooked by the petitioner, however, is the fact that, instead of sanctioning potentially unlimited liability,

---

[6]The Tort Claims Act "was the result of legislative findings that political subdivisions of the State were unable to obtain affordable tort liability insurance coverage without reducing the quantity and quality of traditional governmental services." *O'Dell v. Town of Gauley Bridge*, 188 W.Va. 596, 600, 425 S.E.2d 551, 555 (1992) (citing W.Va. Code § 29-12A-2).

[7]*See* W.Va. Code § 29-12A-3(c) (2013) (defining "political subdivision" to mean "any county commission, municipality and county board of education; any separate corporation or instrumentality established by one or more counties or municipalities . . .; any instrumentality supported in most part by municipalities; any public body charged by law with the performance of a government function . . . .").

[8]The petitioner advances her position based on the assumption that a fire hydrant qualifies as an aqueduct. The trial court made no finding on this issue and we do not find it necessary to further address this issue given our resolution of this matter.

subsection 4(c) begins with the disclaimer that the subsequent grants of liability are expressly made "[s]ubject to section five [§ 29-12A-5] and six [§ 29-12A-6]." [9] W.Va. Code § 29-12A-4(c). As a result, subsections 4(c)(2) and 4(c)(3) cannot be dissociated from the introductory language that expressly conditions liability on the absence of any provisions of immunity set forth in section five and six of article twenty-nine. *See* W.Va. Code §§ 29-12A-4, -5, -6.

As the City correctly recognizes, language in West Virginia Code § 29-12A-5(a)(5) operates to prevent the imposition of liability under the facts of this case. Section 5(a)(5) provides immunity from liability to political subdivisions for the "failure to provide, or the method of providing, police, law enforcement or fire protection." *Id*. Because any potential liability set forth in subsection 4(c)(2) is made expressly subject to the grant of immunity provided in section 5(a)(5), there is no right to seek recovery from a political subdivision for the negligent performance of its employee's actions performed within the scope of his or her employment and authority when those actions pertain to either the failure to provide fire protection or the method of providing fire protection. Cf. W.Va. Code § 29-12A-4(c)(2) to § 29-12A-5(a)(5). There is similarly no right to recover damages from a political subdivision for the negligent failure to keep a city's waterworks and fire hydrant

---

[9]The petitioner wholly fails to address both the existence and the effect of this critical language that expressly links liability to the lack of a superceding grant of immunity.

system fully operable if the actions at issue are subsumed within the immunity extended to political subdivisions for the failure to provide fire protection or the method of providing fire protection. Cf. W.Va. Code § 29-12A-4(c)(3) to § 29-12A-5(a)(5); *see also Jackson v. Belcher*, 232 W.Va. 513, 523, 753 S.E.2d 11, 19-21 (2013) (Loughry, J., dissenting) (recognizing significance of statutory immunity and detrimental effects of "render[ing] the immunity plainly articulated by the Legislature wholly without effect").

In *Hose v. Berkeley County Planning Commission*, 194 W.Va. 515, 460 S.E.2d 761 (1995), this Court addressed the precise issue of how subsection 4(c)(2) must be read in conjunction with section 5 of the Tort Claims Act. Seeking to elude the statutory immunity set forth in section 5(a)(9), which concerns licensing functions performed by a political subdivision, the plaintiff in *Hose* alleged negligence under 4(c)(2) based on the approval by the Planning Commission's employee of the defendant's plans to install a thirty-six inch drainage pipe. *Id.* at 520, 460 S.E.2d at 766. We expressly rejected this attempt to rely on subsection 4(c)(2) as a means of defeating immunity by underscoring the pivotal proviso language–*subject to section five and six* [§§ 29-12A-5 and 29-12A-6] *of this article*. *See Hose*, 194 W.Va. at 521, 460 S.E.2d at 767. Looking solely to the "subject to" language of subsection 4(c), this Court recognized that the specified immunity provided in subsection 5(a)(9) necessarily trumped the grant of liability seemingly extended by subsection 4(c)(2). As we held in syllabus point four of *Hose*:

6

Pursuant to *W.Va. Code*, 29-12A-4(c)(2) [1986] and *W.Va. Code*, 29-12A-5(a)(9) [1986], a political subdivision is immune from liability if a loss or claim results from licensing powers or functions such as the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority, *regardless of whether such loss or claim is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment.*

194 W.Va. at 517, 460 S.E.2d at 763 (emphasis supplied); *accord State v. Sanders*, 224 W.Va. 630, 634, 687 S.E.2d 568, 572 (2009) (discussing action brought under W.Va. Code § 29-12A-4(c)(3) and stating, "[h]owever, *W.Va. Code*, § 29-12A-4(c)(3) is made subject to the immunities set forth in section five and six of article 29"); *Calabrese v. City of Charleston*, 204 W.Va. 650, 659, 515 S.E.2d 814, 823 (1999) (holding that "aqueduct" language of W.Va. Code § 29-12A-4(c)(3) encompassed negligent sewer maintenance and operation claim but recognizing that any potential liability was subject to specific immunity provisions set forth in sections 5 and 6 of the Tort Claims Act).

Like our decision in *Hose*, this case is similarly driven by the axiomatic principle of statutory construction that requires us to apply the Tort Claims Act as written. *See* Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."); *see also T. Weston, Inc. v. Mineral Cty.*, 219 W.Va. 564, 568, 638 S.E.2d 167, 171 (2006) ("Courts should favor the plain and obvious meaning

of a statute as opposed to a narrow or strained construction."). Extending the holding of

*Hose* to the case *sub judice*, we conclude that statutory immunity exists for a political

subdivision under the provisions of West Virginia Code § 29-12A-5(a)(5) if a loss or claim

results from the failure to provide fire protection or the method of providing fire protection

regardless of whether such loss or claim, asserted under West Virginia Code § 29-12A-

4(c)(2), is caused by the negligent performance of acts by the political subdivision's

employees while acting within the scope of employment. To the extent that this ruling is

inconsistent with syllabus point five of *Smith v. Burdette*, 211 W.Va. 477, 566 S.E.2d 614

(2002), the holding as it pertains to the negligent acts of a political subdivision's employee

in furtherance of a method of providing fire protection is hereby overruled.[10] Similarly, we

further hold that statutory immunity exists for a political subdivision under West Virginia

Code § 29-12A-5(a)(5) if a loss or claim results from the failure to provide fire protection

or the method of providing fire protection regardless of whether such loss or claim, asserted

under West Virginia Code § 29-12A-4(c)(3), is caused by the negligent failure of the

political subdivision to maintain, inspect and otherwise keep its waterworks and fire hydrant

system fully operable.

While the petitioner has sought to disguise the essence of her claim through

---

[10]This Court failed to discuss either our decision in *Hose* or the "subject to" language in section 4(c). *See* 211 W.Va. at 481, 566 S.E.2d at 618. As a result, *Burdette* conflicts with, and cannot be reconciled with, our precedent on the issue of statutory immunity.

8

creative pleading, the circuit court was not fooled and neither are we. Despite the petitioner's attempt to camouflage her claim as divorced from matters of fire protection or policy implementation,[11] the record in this case makes clear that *but for the fire* this matter would not be before us. Upon analysis, virtually every aspect of the petitioner's case arises from the City's efforts to squelch that fire. Were it not for the need to dispatch the fire department in response to the subject fire and were it not for the unsuccessful efforts of the fire department to contain the flames, the petitioner would not have filed the underlying lawsuit. Similarly, but for the need to utilize water to suppress the fire, the purported existence of rocks in the water line would not be at issue. Each and every fact upon which the petitioner relies to assert her claim is inexorably linked to the fire at her home which the City was not able to extinguish.[12]

When presented with artful pleadings seeking to frame liability on a negligent water supply, courts have readily identified the attempt to circumvent the statutory immunity that is regularly extended to public bodies in exchange for fire protection services. In *Shockey v. City of Oklahoma City,* 632 P.2d 406 (Okla. 1981), the Supreme Court of

---

[11]Her claim that she has not asserted negligence against the firefighters rings hollow as the City is the party against whom negligence is asserted whether the claim is for failure to provide adequate fire protection or for failure to provide water for fire fighting purposes.

[12]It is clear from the petitioner's complaint that she appreciated the pyric origin of her claim as she pled: "As a result of the negligent acts of the City of Wheeling, the fire . . . could not be contained and the house became a total loss."

Oklahoma considered whether the Oklahoma Political Subdivisions Tort Claims Act barred a tort action against a municipality for fire-related damages that resulted from an inoperable fire hydrant. Like West Virginia, Oklahoma extends immunity to its political subdivisions for the failure to provide, and the methods employed in, providing fire protection. *See id.* at 408 (discussing 51 Okla. Stat., Governmental Tort Claims Act, § 155(6) (1978)). In concluding that the statutory immunity provisions pertaining to fire protection were applicable, the court reasoned:

> *Fire hydrants, as such, are a part of the physical structure of the fire department and their maintenance, including an adequate supply of water, and their repair are incidental to the operation of the fire department.* The fire hydrants were installed for the purpose of fire protection. Although appellants' damages may have resulted from a failure of the water service, supplying water to the fire hydrants was just a part of appellee's [the City's] overall operation in providing fire protection. Assuming, arguendo, appellee negligently failed to employ the proper methods in checking its water service for the proper operation of its fire hydrants, s[ection] 155(6) clearly exempts it from liability.

632 P.2d at 408 (emphasis supplied); *accord Zacharie v. City of San Antonio*, 952 S.W.2d 56, 59 ( Tex. App. 1997) (barring suit under Texas Torts Claims Act for failure to maintain pumps to supply adequate water pressure to fire hydrant system, stating that "[e]nsuring that an adequate amount of water is available to fire hydrants is necessarily connected to providing fire protection").

Having conceded that an action for failing to provide adequate firefighting

10

personnel and equipment was barred by statutory immunity, the plaintiffs in *Wells v. City of Lynchburg*, 501 S.E.2d 746 (S.C. Ct. App. 1998), sought recovery based on the city's failure to inspect and/or maintain a system of fire hydrants and to notify authorities of inoperative fire hydrants.  *Id.* at 750.  In rejecting this tact, the appellate court stated:

> We agree with the reasoning of the Oklahoma court in *Shockey* and hold the South Carolina Tort Claims Act precludes Appellants' action.  The maintenance of fire hydrants and the supply of water for fighting fires clearly is included in the exceptions from liability in section 15-78-60 for the method of providing fire protection and the discretionary act of maintaining the city water system with the resources available.  *See, e.g., Pierce v. Village of Divernon*, 17 F.3d 1074 (7th Cir. 1994) (Illinois tort claims act codifies common law rule that a municipality owes the public no general duty of fire protection and that it therefore cannot be held liable either for failing to provide or negligently providing fire protection services; an alleged failure to provide sufficient water or water pressure could be viewed either as a complete failure to provide fire protection or as a failure to provide sufficient facilities to suppress or contain a fire; either way, the municipality is immune); . . . *City of Columbus v. McIlwain*, 205 Miss. 473, 38 So.2d 921 (1949) (municipality is not responsible for the destruction of property within its limits by a fire merely because, through the negligence or other default of the municipality or its employees, the members of the fire department failed to extinguish the fire regardless of whether this failure is due to an insufficient supply of water, the interruption of the service during the course of a fire, the neglect or incompetence of the firemen, the defective condition of the fire apparatus, negligence in permitting fire hydrants to become clogged or defective, etc.); *Ross v. City of Houston*, 807 S.W.2d 336 (Tex. App. 1990) (city's policy of inspecting fire hydrants was directly connected to the city's method of providing fire protection; therefore, the state tort claims act exclusion from governmental liability for claims arising from the failure to provide or the method of providing fire protection

11

barred suit by homeowner).

501 S.E.2d at 751.

In *Travelers Excess and Surplus Lines Co. v. City of Atlanta,* 677 S.E.2d 388 (Ga. App. 2009), the insurers of commercial property destroyed by a fire sought to cast their complaint as spawning from the negligence of the city's water department rather than its fire department. Dismissing this patent attempt to avoid immunity, the court reasoned:

> No matter how artfully pleaded, the essence of the Travelers Companies' complaint is that the City failed to promptly provide adequate fire protection in response to the fire, leading to increased property damage. Furthermore, fire hydrants "are a part of the physical structure of the fire department," are "installed for the purpose of fire protection," and are a necessary component of the fire protection services offered to citizens by a municipality. As such, it is of no legal consequence that the negligence respecting the hydrant was committed by the water department rather than the fire department itself.

*Id.* at 390 (internal citation omitted).

Like the courts in Oklahoma, Georgia, Texas, Illinois, South Carolina, and Mississippi, we agree that fire hydrants are an integral component of fire protection services. Consequently, any attempt to separate the provision of water services necessary to battle fires from the firefighting itself is untenable. Accordingly, we determine that for purposes of the immunity provided by West Virginia Code § 29-12A-5(a)(5), a municipality's policy

of inspecting and maintaining its fire hydrants is directly connected to the city's method of providing fire protection. Because we conclude that the actions for which the petitioner is seeking to impose liability on the City fall within the statutory ambit of fire protection or the method of providing fire protection, the immunity extended to political subdivisions by West Virginia Code § 29-12A-5(a)(5) is a bar to further prosecution of the petitioner's case. To decide otherwise would risk further erosion of "well-established common law and statutory immunities which are vital to the proper function[ing] of government." *Belcher*, (Loughry, J., dissenting), 232 W.Va. at 529, 753 S.E.2d at 27.

## IV. Conclusion

Having determined that the Circuit Court of Ohio County did not error in dismissing this case with prejudice based on principles of statutory and common law immunity, the August 18, 2015, order is affirmed.

Affirmed.

13