687 S.E.2d 568

**STATE of West Virginia ex rel., CORPORATION OF CHARLES TOWN, a Municipal Corporation, Petitioner**

**v.**

**The Honorable David H. SANDERS, Judge of the Circuit Court of Jefferson County; Robert W. Furr, and Jackson–Perks Post No. 71, Inc., Respondents.**

**No. 35034.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 6, 2009.

Decided Nov. 16, 2009.

Concurring Opinion of Chief Justice Benjamin Dec. 22, 2009.

631

Tamara J. DeFazio, Esq., Shuman, McCuskey & Slicer, PLLC, Morgantown, WV, for Petitioner.

Thomas W. Murtaugh, Esq., Law Office of Thomas W. Murtaugh, Sinks Grove, WV, Dale A. Buck, Esq., Law Office of Dale Buck, PLLC, Martinsburg, WV, for Respondent, Robert W. Furr.

Scott D. Clements, Esq., Dickie, McCamey & Chilcote, PC, Pittsburgh, PA, for Respondent, Jackson–Perks Post 71, Inc.

PER CURIAM:

Petitioner, the municipal corporation of Charles Town (hereinafter "Charles Town"), seeks a writ of prohibition to prevent the Circuit Court of Jefferson County from proceeding with the remainder of the underlying civil action until it is dismissed with prejudice from the case. Respondent Robert W. Furr brought this action against Charles Town

after he slipped and fell on "black near-invisible ice" in a public parking lot that was leased, operated and maintained by Charles Town. Charles Town argues that it is entitled to governmental immunity from this suit pursuant to *W.Va.Code* § 29–12A–5(a)(6) (1986), and filed a motion for judgment on the pleadings and to dismiss the second amended complaint. The circuit court denied the motion and Charles Town subsequently filed this writ of prohibition.

As set forth below, we find that Charles Town is entitled to immunity pursuant to the plain language of *W.Va.Code* § 29–12A–5(a)(6), and *W.Va.Code* § 8–12–12, and grant the requested writ.

## I.

### Facts & Background

On April 1, 2003, Charles Town leased a parking lot from Jackson–Perks Post No. 71, Inc., the American Legion (hereinafter "American Legion"). The lease allowed Charles Town to put parking meters on the lot and collect revenue from them in exchange for an annual rent payment of $1200.00, as well as Charles Town's promise to maintain the parking lot and "keep the macadam, or blacktop, in a reasonable state of repair" and "keep the premises policed and free from trash, debris, weeds, snow and ice."

On February 14, 2007, Respondent Robert W. Furr (hereinafter "Respondent Furr") was injured when he slipped and fell on "black near-invisible ice" while walking across the American Legion parking lot. Respondent Furr sued Charles Town for negligently maintaining the parking lot. He later sought and was granted leave to amend his complaint to add the American Legion as a co-defendant.[1] In his second amended complaint, Respondent Furr alleges that Charles Town and the American Legion

negligently allowed the subject parking lot to be improperly and dangerously maintained, in that the expansions and contractions caused by the forces of Nature over

time resulted in a worn and uneven parking lot surface and would freeze in patches of black ice, making it dangerous and unfit for safe passage, all in violation of the lease agreement.

Respondent Furr also alleges that Charles Town breached its contractual agreement by (1) failing to remove snow and ice from the parking lot, (2) failing to inspect and issue reports on the safety conditions of the parking lot, and (3) failing to warn the public or close the parking lot when dangerous conditions, like snow and ice, were present.

On March 20, 2009, Charles Town filed a motion for judgment on the pleadings and to dismiss the second amended complaint, asserting that it was immune from liability for Respondent Furr's injuries pursuant to the Governmental Tort Claims and Insurance Reform Act, *W.Va.Code*, § 29–12–1, *et. seq.*, specifically *W.Va.Code* § 29–12A–5(a)(6). On May 28, 2009, the circuit court denied Charles Town's motion, and Charles Town thereafter filed this writ of prohibition to prohibit the circuit court from conducting any further proceedings in this case until Charles Town is dismissed with prejudice.

## II.

### Standard of Review

We have held that "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers, and may not be used as a substitute for [a petition for appeal] or certiorari." Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). In Syllabus Point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), we stated the following standard of review where, as here, a petitioner contends that a trial court has exceeded its legitimate powers:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower

---

1. The American Legion filed a cross-claim against Charles Town for indemnity or contribu-

tion.

tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With this standard in mind, we proceed to consider the parties' arguments.

### III.

#### Analysis

The issue before us is whether *W.Va.Code* § 29–12A–5(a)(6) provides Charles Town with immunity from the allegations made against it in Respondent Furr's second amended complaint. In order to resolve this question, we must examine the precise words of the statute in question. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Where the statutory language is clear and unambiguous, it should be applied as written. *See* Syllabus Point 5, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." (internal quotations and citations omitted)); Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). In determining whether Charles Town is entitled to governmental immunity under *W.Va.Code* § 29–12A–5(a)(6), we note that the general rule of construction in governmental tort legislation cases favors liability, not immunity.[2]

*W.Va.Code*, § 29–12A–5(a)(6) is part of the Governmental Tort Claims and Insurance Reform Act, *W.Va.Code*, § 29–12–1, *et. seq.* The stated purpose of this act is "to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability." *W.Va.Code*, § 29–12A–1 (1986). According to *W.Va.Code*, § 29–12A–3(c) (1986), municipalities are included in the definition of 'political subdivision'.[3]

**2.** Syllabus Point 2 of *Marlin v. Bill Rich Const., Inc.*, 198 W.Va. 635, 482 S.E.2d 620 (1996), states:

The general rule of construction in governmental tort legislation cases favors liability, not immunity. Unless the legislature has clearly provided for immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail.

We are also mindful of the public policy considerations underlying governmental immunity that this Court discussed in *Hutchison v. City of Huntington*, 198 W.Va. 139, 148, 479 S.E.2d 649, 658 (1996):

Immunities under West Virginia law are more than a defense to a suit in that they grant governmental bodies and public officials the right not to be subject to the burden of trial at all. The very heart of the immunity defense is that it spares the defendant from having to go forward with an inquiry into the merits of the case.

**3.** *W.Va.Code*, § 29–12A–3(c) (1986), states:

"Political subdivision" means any county commission, municipality and county board of education; any separate corporation or instrumentality established by one or more counties or municipalities, as permitted by law; any instrumentality supported in most part by municipalities; any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one or more counties, cities or towns; a combined city-county health department created pursuant to article two, chapter sixteen of this

The Governmental Tort Claims Act states at *W.Va.Code*, § 29–12A–4(b)(1) (1986):

> Except as provided in subsection (c) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function[.]

Subsection (c) lists five instances in which political subdivisions are liable for damages arising from an act or omission. Respondent Furr argues that Charles Town is liable for his injuries under *W.Va.Code*, § 29–12A–4(c)(3), which states that political subdivisions are liable for injuries caused by their negligent failure to keep public roads, highways, streets, avenues, alleys, or sidewalks in repair or free from nuisance.[4] However, *W.Va.Code*, § 29–12A–4(c) is made subject to the immunities set forth in section five and six of article 29.[5]

The statute at issue herein, *W.Va.Code*, § 29–12A–5, lists 17 instances in which a political subdivision is immune from liability for a loss or claim. Specifically at issue is *W.Va.Code*, § 29–12A–5(a)(6), which states:

> (a) A political subdivision is immune from liability if a loss or claim results from:

> (6) Snow or ice conditions or temporary or natural conditions on any public way or other public place due to weather conditions, unless the condition is affirmatively caused by the negligent act of a political subdivision[.]

■ This Court previously addressed *W.Va.Code*, § 29–12A–5(a)(6), in *Porter v. Grant County Board of Education*, 219 W.Va. 282, 633 S.E.2d 38 (2006), a case in which a spectator who slipped and fell on snow and ice on school grounds while en route to a school-sponsored athletic contest, brought an action against the county school board alleging that the board was negligent for holding the athletic contest on the same date that it cancelled classes countywide due to inclement whether. The Court found that the school board was entitled to immunity under *W.Va.Code*, § 29–12A–5(a)(6), because the school board did not place the snow or ice conditions on the sidewalk on which the spectator fell. In Syllabus Point 3 of *Porter*, the Court held:

> *W.Va.Code*, § 29–12A–5(a)(6) (1986) clearly provides political subdivisions with immunity from liability for losses or claims resulting from snow or ice placed on public ways or other public places by the weather. However, political subdivisions are not immune from liability for losses or claims occurring from an affirmative negligent act of the political subdivision resulting in snow or ice on public ways or other public places.

The Court in *Porter* gave two examples of affirmative negligent acts which could render political subdivisions liable for injuries resulting from snow or ice on a public way: "an employee of the political subdivision could remove snow or ice from the roadway by throwing it onto the sidewalk. Also an employee ... could permit a broken pipe or hose to leak water onto a sidewalk where the

---

code; public service districts; and other instrumentalities including, but not limited to, volunteer fire departments and emergency service organizations as recognized by an appropriate public body and authorized by law to perform a government function: Provided, That hospitals of a political subdivision and their employees are expressly excluded from the provisions of this article.

4. *W.Va.Code*, § 29–12A–4(c)(3) states:

Political subdivisions are liable for injury, death, or loss to persons or property caused by their negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in re-

pair, or free from nuisance, except that it is a full defense to such liability, when a bridge within a municipality is involved, that the municipality does not have the responsibility for maintaining or inspecting the bridge.

5. *W.Va.Code*, § 29–12A–4(c) states:

*Subject to sections five [§ 29–12A–5] and six [§ 29–12A–6] of this article*, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function[.]
(emphasis added).

water subsequently freezes." *Porter,* 219 W.Va. at 286, 633 S.E.2d at 42.

In the case *sub judice,* the issue is whether the snow and ice were present on the parking lot as a result of the weather or because of an affirmative negligent act of Charles Town placing it there. Respondent Furr alleges that Charles Town "negligently allowed the subject parking lot to be improperly and dangerously maintained, in that the expansions and contractions caused by the forces of Nature [*sic* ] over time resulted in a worn and uneven parking lot surface and would freeze in patches of black ice." He also alleges that Charles Town's failure to remove the snow from the parking lot led to "cycles of thawing, evaporation, melting, draining and refreezing ... so that dangerous patches of ice would exist in the subject parking lot for extended periods[.]"

█ There is a substantial difference between the examples of affirmative negligent acts discussed in *Porter* and the allegations Respondent Furr makes in his second amended complaint. Both of the *Porter* examples, throwing snow from a roadway onto a sidewalk or permitting water from a broken pipe or hose to leak onto a sidewalk where it subsequently freezes, are situations in which the negligent act caused the snow or ice to be on the public way. Respondent Furr does not allege that the snow or ice would have been absent from the parking lot if not for Charles Town's negligent act. Rather, the allegation is that Charles Town's failure to timely remove the snow and ice, coupled with its failure to properly maintain the parking lot caused the snow and ice to be concentrated in a particular area of the parking lot. Respondent Furr contends that Charles Town's affirmative negligent act was allowing the parking lot to expand and contract over time "caused by the forces of [n]ature", thus allowing the lot's surface to become uneven allowing water to freeze into patches of ice.

We believe that Respondent Furr's allegation does not constitute an affirmative negligent act because Charles Town did not place the snow and ice onto the parking lot, the weather did. *W.Va.Code,* § 29–12A–5(a)(6), and this Court's holding in *Porter,* state that

political subdivisions are immune from liability for losses or claims resulting from snow or ice placed on public ways by the weather.

Respondent Furr also argues that Charles Town should not be permitted to claim immunity under *W.Va.Code,* § 29–12A–5(a)(6), because it entered into a contract with the American Legion whereby it agreed to "keep the premises policed and free from trash, debris, weeds, *snow and ice.*" (Emphasis added). Furr argues that Charles Town waived the immunity set forth in *W.Va.Code,* § 29–12A–5(a)(6), when it contractually agreed to keep the parking lot free from snow and ice.

Charles Town's power to enter into the contract with the American Legion comes from *W.Va.Code,* § 8–12–12, which states, in relevant part:

Every municipality shall have plenary power and authority to enter into a lease with the owner or owners of any real property situate within the corporate limits of such municipality by which such real property is demised, leased and let to such municipality for an off-street parking facility (including parking lots, buildings, ramps, parking meters and other appurtenances deemed necessary, appropriate or incidental to the regulation, control and parking of motor vehicles), which off-street parking facility is hereby declared to be a municipal public work, and every such municipality shall have plenary power and authority to establish, maintain and operate such parking facility....

Any lease entered into by and between any such municipality and the owner or owners of any such real property may contain such terms and conditions as may be agreed upon between the parties, *not inconsistent with any of the provisions of this section or other provisions of law.*

(emphasis added).

█ The plain language of this statute states that the terms and conditions of a lease between a municipality and an owner of an off-street parking facility may not include lease terms that are inconsistent with any other provision of law. Reading this statute in *pari materia* with *W.Va.Code,* § 29–12A–

5(a)(6), it is clear that a municipality may not assume tort liability for injuries occurring in a leased parking lot for losses or claims resulting from snow or ice that is placed on the parking lot by the weather. To the extent that Respondent Furr argues that Charles Town assumed tort liability for the parking lot by agreeing to keep it free from snow and ice, this lease term is inconsistent with the immunity set forth in *W.Va.Code*, § 29–12A–5(a)(6), and is thus precluded under the plain language of *W.Va.Code*, § 8–12–12.

### IV.

#### *Conclusion*

Based on the foregoing, we find that Charles Town is entitled to immunity under *W.Va.Code*, § 29–12A–5(a)(6), and grant the requested writ of prohibition.

Writ Granted.

Chief Justice BENJAMIN concurs and reserves the right to file a separate opinion.

BENJAMIN, Chief Justice, concurring:

(Filed Dec. 22, 2009)

On the tort claim pending against petitioner Charles Town, I agree with the Court's opinion that a writ should issue with respect to the direct immunity question. What I find more curious, and perhaps worthy of further legal development at some point, is the contractual obligations which Charles Town owes to respondent, Jackson–Perks Post No. 71, Inc. ("Post"). To the extent the majority believes a municipality may not obligate itself to keep property it chooses to lease in a certain manner, I disagree. Should the Post ultimately be held responsible in tort for injuries herein, I believe the question of a contractual claim by the Post against Charles Town to possibly still be viable. Otherwise, municipalities would be free to negotiate terms of contracts with private citizens which the municipality has no intention of keeping. A citizen who detrimentally relies on such representations could then forego obtaining liability insurance only to be held liable in place of the municipality who is the actual tortfeasor. I do not believe the Legislature intended such a result.