IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 14-0273

_____

FILED

**May 27, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel. CITY OF BRIDGEPORT,
a West Virginia Municipal Corporation; THE BRIDGEPORT POLICE
DEPARTMENT; JOHN WALKER; and A. KIM HAWS,
Petitioners,

v.

THE HONORABLE JOHN LEWIS MARKS, JR.,
Judge of the Circuit Court of Harrison County; DOUG'S TOWING, LLC;
and DAN RIGGS TOWING,
Respondents.

_____

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED

_____

Submitted:  May 6, 2014
Filed:  May 27, 2014

Tamara J. DeFazio, Esq.
J. Robert Russell, Esq.
Shuman, McCuskey & Slicer
Morgantown, West Virginia
Counsel for Petitioners

Edward R. Kohout, Esq.
Morgantown, West Virginia
Counsel for Doug's Towing

Daniel C. Cooper, Esq.
Jamison H. Cooper, Esq.
Cooper Law Offices
Bridgeport, West Virginia
Counsel for Dan Riggs Towing

JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS BY THE COURT


1. The provisions of West Virginia Code § 24-6-12 (2013) that require a county commission to triannually establish a towing services policy for use in conjunction with requests for towing services processed through an emergency telephone system do not prohibit a municipality from adopting a towing policy that is separate and distinct from the county's towing policy.


2. "The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition." Syl. Pt. 1, *Hutchison v. City of Huntington*, 198 W.Va. 139, 479 S.E.2d 649 (1996).

LOUGHRY, Justice:

Petitioners City of Bridgeport ("City"), the Bridgeport Police Department ("Police Department"), Police Chief John Walker, and City Manager A. Kim Hawes (sometimes collectively referred to as "petitioners") seek a writ of prohibition in connection with the January 14, 2013, decision of the Circuit Court of Harrison to deny the petitioners' motion for summary judgment on immunity grounds.[1] In support of their requested relief, the petitioners argue they are immune from prosecution in the underlying suit based on two alternative provisions of the West Virginia Governmental Tort Claims and Insurance Reform Act (the "Act").[2] Upon our careful review of the record in this matter against the applicable provisions of the Act,[3] we conclude that the trial court committed error in ruling that the petitioners are not entitled to legislative immunity. Accordingly, we grant the requested writ of prohibition.

## I. Factual and Procedural Background

On March 7, 2011, Respondent Doug's Towing initiated the underlying civil action against Dan Riggs Towing and the petitioners. At the center of the lawsuit is the

---

[1]The trial court granted summary judgment to the City with regard to the issue of punitive damages.

[2]*See* W.Va. Code §§ 29-12A-1 to -18 (2013).

[3]*See* W.Va. Code § 29-12A-5(a)(4), -5(a)(5).

1

foundational allegation that the petitioners have violated West Virginia Code § 24-6-12 (2013) by not using the towing rotation list adopted by the Harrison County Commission (the "Commission"). As set forth in the complaint, the petitioners "have established a policy of having their [police] officers contact defendant Dan Rigg's [sic] Towing via their [police] officers' cell phones to request towing services." As a result, Doug's Towing alleges that it has been denied business opportunities and sustained financial loss. Doug's Towing seeks a court directive requiring the petitioners to adopt the towing rotation list used by the Harrison County Office of Emergency Management and E-911 Center. In addition to declaratory relief, Doug's Towing requests compensatory damages[4] for alleged negligence, civil conspiracy, tortious interference with business, and antitrust violations–all as a result of the centralized allegation of harm set forth above.

From the outset, the petitioners sought the dismissal of this case on grounds of statutory immunity. In its initial pleading, the petitioners sought to dismiss the complaint by asserting immunity under West Virginia Code § 29-12A-5(a)(4) (2013), which extends immunity to political subdivisions when a loss or claim results from the "[a]doption or failure to adopt a law, including, but not limited to, . . . regulation or written policy." As an alternate basis for immunity, the petitioners rely on West Virginia Code § 29-12A-5(a)(5), which

---

[4]The trial court ruled against the availability of punitive damages in its January 14, 2013, order.

provides immunity "for the method of providing, police, law enforcement or fire protection."

Opting not to address the issue of immunity, the trial court simply denied the motion to

dismiss and the parties proceeded to engage in discovery.[5] These same grounds of statutory

immunity were asserted in the petitioners' motion for summary judgment, which was denied

by the trial court following a hearing held on March 4, 2014.[6] The petitioners now seek

extraordinary relief from that ruling to prevent them from having to proceed to trial in the

underlying matter.

## II. Standard of Review

As with all cases that present questions of law or involve issues of statutory

interpretation, our review is *de novo*. *See* Syl. Pt. 1, *Appalachian Power Co. v. State Tax

Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative

rule or regulation presents a purely legal question subject to *de novo* review"). In deciding

whether to grant a writ of prohibition in cases where the lower court is acting within its

jurisdiction but alleged to have exceeded its authority, we rely upon those axiomatic factors

set forth in syllabus point four of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d

---

[5]As the basis for its ruling, the trial court relied on authority espousing a preference for deciding cases on their merits. *See, e.g., John W. Lodge Distrib. Co. v. Texaco, Inc.*, 161 W.Va. 603, 605, 245 S.E.2d 157, 159 (1978).

[6]By separate rulings entered on March 19, 2014, the trial court denied the motions for summary judgment filed by Dan Riggs Towing and the petitioners.

12 (1996).[7]  With these standards in mind, we proceed to determine whether the trial court committed error in denying summary judgment to the petitioners.

### III. Discussion

The petitioners assert that the claims made by Doug's Towing against the City and the Police Department fall squarely within the grant of absolute immunity afforded to political subdivisions by West Virginia Code § 29-12A-5(a)(4) and (a)(5).  With regard to the individually-named employees of the City and the Police Department, the petitioners maintain that the record is devoid of evidence which would invoke the statutorily-specified exceptions to immunity for employees of political subdivisions.  *See* W.Va. Code § 29-12A-5(b) (eliminating immunity when acts or omissions are outside scope of employment; are committed with malicious purpose, in bad faith, or in a wanton or reckless manner; or liability is otherwise expressly imposed).  As a necessary predicate to our determination of

---

[7]Those factors are:

> (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.

whether immunity exists in conjunction with the subject lawsuit, we must first review the nature of the claims at issue.

The substantive fulcrum upon which the complaint revolves is the contention of Doug's Towing that the City is required to utilize the towing policy adopted by the Commission. As support for this contention, Doug's Towing relies upon the language of West Virginia Code § 24-6-12. This statute, included as part of our laws that address the creation of local emergency telephone systems, provides in pertinent part:

> (a) Every three years, the county commission of each county or the municipality operating an emergency telephone system or an enhanced emergency telephone system shall, in consultation with all public safety units, public agencies and all available towing services registered as common carriers pursuant to the provisions of chapter twenty-four-a [§§ 24A-1-1 et seq.] of this code, establish a policy that provides for the most prompt, fair, equitable and effective response to requests or dispatches for emergency towing services.

W.Va. Code § 24-6-12(a). Based on the requirement that a county towing policy must be established triannually for purposes of the emergency or 911 calling systems, Doug's Towing contends that the City is necessarily bound to comply with the county's policy and cannot establish its own towing policy. In furtherance of its position, Doug's Towing relies upon the trial court's ruling that a private cause of action exists under West Virginia Code § 24-6-12 which permits "towing operator[s] . . . to challenge any deviations from or disputes over the county's towing policy."

5

Disputing the position advocated by Doug's Towing, the City strenuously argues that West Virginia Code § 24-6-12 fails to establish a private cause of action for compelling compliance with a county's towing policy. The City further disagrees with the contention that a municipality, such as itself, lacks the necessary discretion to employ a towing policy that is at variance with the county's policy.

Even a cursory reading of West Virginia Code § 24-6-12 demonstrates that there is no statutorily-created private cause of action which would permit towing companies to independently dispute the operation of or deviation from a county's towing policy. The clear aim of that statutory provision is to ensure that the 911 emergency operators have a list from which to contact towing companies for the purpose of providing a "prompt, fair, equitable and effective response to requests or dispatches for emergency towing services." W.Va. Code § 24-6-12(a). In marked contrast to the business-promoting objective that Doug's Towing suggests the Legislature sought to encourage with the enactment of this statute, the legislative findings are pointed in another direction entirely:

> It is the purpose of this article to establish a primary emergency telephone number for use in this state and to encourage units of local government and combinations of units of local government to develop and improve emergency communication procedures and facilities in a manner that will allow a quick response to any person calling the primary emergency telephone number seeking police, fire, medical, rescue and other emergency services.

W.Va. Code § 24-6-1.

6

Rather than mandating the adoption of a policy directed at spreading business amongst the various towing operators within a particular county, the clear focus of the statute under scrutiny was to compile a list of potential towing companies for referral purposes when calls are placed through existing county or municipal emergency telephone systems.[8] Instead of seeking to stimulate the income-earning potential of towing business owners,[9] the unmistakable purpose of West Virginia Code § 24-6-12 was to enable the operators of a county or municipal 911 center to quickly identify and contact a towing company for the purpose of removing an incapacitated vehicle from the blocked or otherwise affected roadway in an alacritous manner. The statutory objective is to secure the necessary towing services requested through 911 calls in a manner that is speedy, fair, and, most importantly, effective.[10]

---

[8]When West Virginia Code § 24-6-1 was first enacted in 1979, the provisions were directed solely at counties. With its adoption of West Virginia Code § 24-6-1a in 1988, the Legislature expanded the statutory reach by providing that all references to counties "include the word 'municipality' or 'municipalities' with respect to the subject matter therein, except and unless such reference . . . would not have a logical and clear meaning within such context." *Id.*

[9]As the affidavit of Doug Brady, the owner of Doug's Towing, makes clear, the motivation for the lawsuit was lost revenue.

[10]In an amicus brief submitted below by the Commission, concern for the safety of the public and responders to emergency traffic situations was identified as its dominant interest in connection with effectuating the provisions of West Virginia Code § 24-6-12. After "acknowledg[ing] that the specific issues before this Court are framed in terms of business and financial concerns," the Commission urged the trial court to "maintain an eye towards furtherance and protection of public safety and safety of law enforcement and emergency personnel in disposing of the instant matter."

While the compilation of a list of available towing companies for purposes of the 911 calling center operators was presumably designed in contemplation of utilizing, based on availability, the services of multiple towing companies, there is nothing within the statute under consideration that expressly prohibits the towing practice that is currently being employed by the City.[11] Of perhaps even more import is the fact that the City does not have a 911 calling center. Consequently, the towing-related calls at issue are not being processed by an emergency telephone system; instead, they are handled directly by the City's law enforcement personnel in those instances when a driver fails to specify a particular towing company. *See supra* note 11.

Given that the towing services at the center of the underlying lawsuit did not emanate through an emergency calling center, it stands to reason that the provisions of West Virginia Code § 24-6-12 do not even apply to the case before us. Because Doug's Towing seeks to require the City to adhere to the county's towing policy,[12] however, we proceed to

---

[11]Pursuant to the City's towing policy, the police officers and first responders inquire of the individual in need of towing services as to whether that person has a particular towing company that they wish to use. Only where the driver has no preference, does the City contact Dan Riggs Towing to remove vehicles located within the city limits.

[12]Despite representations made during oral argument before this Court, it appears from the appendix record submitted to this Court that the Commission may have failed to formally adopt the towing policy at the center of this dispute. Not only is the submitted "policy" unsigned and undated, but correspondence between attorneys dated October 22, 2008, indicates that "there still does not exist a policy of the Harrison County Commission concerning the dispatching of emergency towing services." That same

8

determine whether there is any merit to this request. As a basis for its conclusion that a private cause of actions exists to enforce the provisions of West Virginia Code § 24-6-12, the trial court referred to West Virginia Code § 24-6-1a.[13] Pursuant to the proviso in section 1a, any municipality that wishes to adopt its own emergency calling system must first get the county's approval where the county already has a 911 calling system in place. *See* W.Va. Code § 24-6-1a. While the trial court apparently sought to rely on the proviso language of section 1a, it is clear that such language only refers to the establishment of emergency telephone systems and *not* to the creation of towing policies. *See id.* The trial court's conclusion that a municipality cannot adopt a towing policy for the purpose of clearing its roadways of unwanted and safety-affecting disabled vehicles merely because of the existence of a county policy[14] is without foundation.

We recently recognized in *M & J Garage and Towing, Inc. v. State Police,* 227

---

letter continues: "A policy may have been put into effect in 2001, but as far as he [Police Chief John Walker] can determine, any such policy, if a formal policy was ever adopted, has never been readopted or updated since 2001."

[13]In its order denying summary judgment, the trial court ruled that "the Court [referring to itself] has previously ruled that violations of W.Va. Code §§ 24-6a-1 and 24-6-12 provide a private cause of action to any towing operator . . . ." While there is no West Virginia Code § 24-6a-1, West Virginia Code § 24-6-1a (the statute to which we presume the trial court was referring) contains the following language: "Provided, That if any county has a system in place, municipalities may not adopt a different system without county approval."

[14]*See supra* note 12.

W.Va. 344, 709 S.E.2d 194 (2010), that "State Police detachments may exercise reasonable discretion in dispatching or utilizing an appropriate towing or wrecker service registered as a common carrier with the West Virginia Public Service Commission." *Id.* at 350, 709 S.E.2d at 200. The City argues, and we agree, that it is analogously entitled to exercise "reasonable discretion" in utilizing the necessary towing services to clear its streets of wrecked and/or disabled vehicles. As the affidavit of City Police Chief John Walker acknowledges, the City's current towing policy was adopted

> in an effort to ensure the safety of the streets and roadways within The City of Bridgeport by facilitating the prompt removal of wrecked vehicles or vehicles otherwise disabled for any reason from the streets and roadways of The City of Bridgeport and to make the most efficient use of The City of Bridgeport's law enforcement resources, all with a view toward enhancing public safety and promoting the interests of the public.

The selection of Dan Riggs Towing, when no preference is indicated, appears to be logistically-driven as Dan Riggs Towing is the only towing company physically located within the city limits.[15] From the record of this case, there is no basis from which to conclude that the City's towing policy exceeds its authority to exercise reasonable discretion

---

[15]Doug's Towing is located in Westover. According to his affidavit, Doug Brady was informed by the City in 2008 that "only operators who were physically located within the City of Bridgeport would be called to tow for Bridgeport." Mr. Brady indicated that he could not afford to buy a piece of commercially-zoned property within the Bridgeport city limits.

over the handling of towing-related decisions.[16]  What the record suggests is that the City makes towing service selections, when required, in a manner directed at clearing its streets in an exigent fashion for the unquestionably laudatory purpose of promoting public safety. We wholly reject the contention of Doug's Towing that West Virginia Code § 24-6-12 was designed to eliminate restraints on trade.[17]  As discussed above, that statute was designed to enable emergency call centers to have a list of potential towing companies to use in responding to calls.  Accordingly, we conclude that the provisions of West Virginia Code § 24-6-12 that require a county commission to triannually establish a towing services policy for use in conjunction with requests for towing services processed through an emergency telephone system do not prohibit a municipality from adopting a towing policy that is separate and distinct from the county's towing policy.

Having decided that the City's towing policy does not violate West Virginia

---

[16]In his affidavit, Police Chief Walker averred that

> "Dan Riggs' Towing has historically been reliable and
> responsive in connection with towing service provided by it
> and its storage facility for disabled vehicles is located within
> The City of Bridgeport and can, when needed, be quickly
> accessed by law enforcement officers thereby minimizing the
> burdens on The City of Bridgeport's law enforcement
> resources[.]"

[17]Because the towing business is heavily-regulated and controlled by the Public Service Commission, we leave any legitimate concerns rooted in unfair business distribution or opportunities to that agency.

Code § 24-6-12, we proceed to determine whether the trial court should have granted the City immunity under either provision of the Act upon which the City asserted entitlement to legislative immunity. *See* W.Va. Code § 29-12A-5(a)(4),(5). We turn first to subsection (a)(4) which provides immunity to political subdivisions when a loss or claim results from the "[a]doption or failure to adopt a law, including, but not limited to, . . . regulation or written policy." The gravamen of the complaint filed by Doug's Towing is the failure of the City and its Police Department to adopt and abide by the Commission's towing policy and regulations. In this case, there can be no question that the claims asserted by Doug's Towing emanate from an alleged failure to adopt "regulation or written policy." *Id.* Because the claims at issue fall squarely within the purview of West Virginia Code § 29-12-5(a)(4), the City and the Police Department are entitled to statutory immunity from liability for the claims asserted against them by Doug's Towing.

Alternately, the City and the Police Department look to the provisions of West Virginia Code § 29-12A-5(a)(5) for immunity purposes. Under that statutory provision, immunity is extended where a claim or loss results from "the failure to provide, or the method of providing, police, law enforcement or fire protection." *Id.* We previously interpreted this section as "refer[ring] to the decision-making or the planning process in developing a governmental policy, including how that policy is to be performed." Syl. Pt. 4, in part, *Smith v. Burdette*, 211 W.Va. 477, 566 S.E.2d 614 (2002). Thus, the City's

12

decision to disregard the county towing policy[18] and to develop its own towing policy, and the application of that policy by the Police Department, also fall within the reach of section 5(a)(5).

With regard to the individually-named defendants, Police Chief Walker and City Manager Hawes, there is no evidence in the record of this case that would invoke the exceptions to immunity for the employees of a political subdivision. *See* W.Va. Code § 29-12A-5(b). Rather than presenting evidence of a municipal towing policy that was designed and effectuated with malicious purpose, bad faith, or in a wanton, reckless manner, we see nothing but the paradigmatic governmental function–the very type of routine bureaucratic action that the Legislature sought to immunize from liability. Without such immunity, it has been observed, that governmental employees would regularly be prevented from utilizing their discretion for the public good for fear of litigious reprisal.

As we made clear in *Hutchison v. City of Huntington*, 198 W.Va. 139, 479 S.E.2d 649 (1996), absolute statutory immunity, like qualified immunity, "is an *immunity from suit* rather than a mere defense to liability" that "is effectively lost if the case is erroneously permitted to go to trial." *Id.* at 147, 479 S.E.2d at 657 (citing *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985) and emphasis in original). We further recognized that

---

[18]*See supra* note 12.

"the need for early resolution in cases ripe for summary judgment is particularly acute when the defense is in the nature of an immunity." 198 W.Va. at 147, 479 S.E.2d at 657. Elucidating on the significance of prompt resolution of immunity-related defenses, we stated:

> Immunities under West Virginia law are more than a defense to a suit in that they grant governmental bodies and public officials the right not to be subject to the burden of trial at all. The very heart of the immunity defense is that it spares the defendant from having to go forward with an inquiry into the merits of the case.

*Hutchinson,* 198 W.Va. at 148, 479 S.E.2d at 658.

In light of the clear public policy considerations that underlie the Legislature's decision to create immunity for specified types of governmental conduct, this Court has stated that "[i]n absolute statutory immunity cases, the lower court has little discretion, and the case must be dismissed if one or more of the provisions imposing absolute immunity applies." *Id.* at 148 n.10, 479 S.E.2d at 658 n.10. As a result, we held in syllabus point one of *Hutchinson:*

> The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition.

198 W.Va. at 144, 479 S.E.2d at 654, syl. pt. 1; *accord State ex rel. Charles Town v. Sanders,*

14

224 W.Va. 630, 687 S.E.2d 568 (2009) (granting writ of prohibition based on trial court's failure to grant immunity under W.Va. Code § 29-12-5(a)(6)); *State ex rel. Martinsburg v. Sanders*, 219 W.Va. 228, 632 S.E.2d 914 (2006) (granting writ of prohibition based on trial court's failure to recognize immunity under W.Va. Code § 29-12-5(a)(12)).

Given the clear grant of immunity to the petitioners pursuant to the provisions of West Virginia Code § 29-12A-5(a)(4) and (5), there is no question that the extraordinary relief sought by the petitioners is required in this case. The availability of an appeal wholly ignores the essence of absolute immunity–the avoidance of trial in the first instance. The legislative decision to clothe certain actions of governmental agencies and employees in a cloak of immunity is not one that should be casually disregarded. Without that promise of immunity, it is probable that many critical governmental decisions would cease to be made and the services that most citizens expect their government to provide would consequently be unavailable.

## IV. Conclusion

Having determined that the petitioners are clearly entitled to the relief sought, we grant the requested writ of prohibition.

Writ granted.